UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. <u>10-80149-CR-MARRA/HOPKINS(s)</u>

UNITED STATES OF AMERICA,

   Plaintiff,

v.

CHRISTOPHER HUTSON,

   Defendant.

_____/

FILED by _____ D.C.
OCT 17 2011
STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. - W.P.B.

## STIPULATED STATEMENT OF FACTS

The United States of America and CHRISTOPHER HUTSON enter into the following stipulated statement of facts in support of the defendant's plea of guilty:

Had this case proceeded to trial, the government would have proven that the defendant conspired to participate in criminal activities with a group of individuals and entities associated in fact as a criminal enterprise, the activities of which affected interstate commerce. The criminal enterprise engaged in a pattern of racketeering activity.

The government would have established through testimony provided by coconspirators, Court authorized wire interceptions and documentary evidence that the defendant participated in the criminal enterprise.

The evidence will establish that in or about 2007, co-defendant Jeffrey George was introduced to a corrupt physician who worked at a pain management clinic owned by a coconspirator. Jeffrey George was aware that the coconspirator was himself, a drug abuser. The corrupt physician advised Jeffrey George that he (George) could make large sums of money by

opening his own pain clinic. Jeffrey George contacted his brother Christopher George and discussed the opening of a pain clinic. In or about 2008, Jeffrey and Christopher George financed the establishment of South Florida Pain. They initially employed the corrupt physician in the clinic. Thereafter, Christopher George and Jeffrey George had a dispute over money and Jeffrey George opened separate pain clinics in Palm Beach County. Christopher George solicited physicians through advertisements placed on Craig's list. The corrupt physician introduced Christopher George to pharmaceutical wholesalers. Christopher George initially used the corrupt physician's DEA number to order controlled substances. They decided that the clinic would only accept cash and credit cards and not allow insurance plans. The George brothers advertised the clinic in local newspapers. The pain clinic slowly began to attract patients.

Once South Florida Pain was operating, Christopher George assumed control and refused to split the proceeds with Jeffrey George. Jeffrey George became frustrated and decided to open his own pain clinic in West Palm Beach, Florida. Jeffrey George used proceeds generated from the illegal sale of anabolic steroids and opened East Coast Pain. Jeffrey George also opened Hallandale Pain. He solicited physicians through Craig's List and hired his friend, Theodore Obermeyer, to manage the clinics. East Coast Pain employed three physicians and Hallandale had one.

Christopher George closed South Florida Pain and opened American Pain in Broward and Palm Beach counties. He also opened Executive Pain in Palm Beach County. Christopher George is a convicted felon based upon a conviction for steroid distribution and therefore placed the ownership of the clinics in nominee names. He solicited a friend, co-defendant Ethan Baumhoff, to be the nominee owner of American Pain. Christopher George also opened two pharmacies, Boca Drugs and Quick Pharm. He placed the pharmacies under nominee ownership. His friend, co-

defendant Andrew Harrington, was the nominee owner of Boca Drugs and co-defendant Daryl Stewart was the nominee owner of Quick Pharm. In or about 2010, Christopher George moved American Pain to a location in Lake Worth. The new location was a 20,000 square foot facility, one of the largest in the United States.

American Pain employed five physicians at one time, and also hired part-time physicians. Executive Pain employed three physicians. Both American and Executive Pain were staffed by friends and associates of Christopher George. Co-defendant Derik Nolan was the head of security at American Pain and was responsible for maintaining order among the patients. Over eighty percent of the patients frequenting American and Executive Pain were from out of state. Witnesses will testify that the typical patient was approximately thirty years old and appeared to be a drug addict. The patients would present with a MRI report or would be referred to a mobile MRI facility located in the parking lot of an adult entertainment business and elsewhere. The patients, very often, traveled with family and friends from Tennessee, Kentucky and Ohio carrying large sums of cash. Virtually all the MRI's were related to alleged neck or back injuries. The patients would often pay bribes to the clinic staff in order to expedite their exams with the physicians. The physicians conducted brief, cursory exams in order to insulate themselves and to make it appear to be a legitimate medical office. The physicians were paid on a per-patient basis and therefore had the incentive to see as many patients as possible. The physicians were paid both by check and in cash. The physicians primarily prescribed the largest amounts of oxycodone (180-240 per month) in order to satisfy the patients. The wire interception establishes that Christopher George and coconspirators discussed the amounts of pills prescribed by the physicians and the necessity to satisfy the patients demands. Such activity is contrary to the requirement for a legitimate medical purpose and violates

the usual and customary standard of care. The physicians did not obtain prior medical records, or prescribe any alternative treatment modalities. Further, they did not make referrals to specialists. Virtually everyone examined by the coconspirator physicians received a prescription for controlled substances. There was no individualization of treatment as required under applicable federal and Florida law.

Defendant HUTSON was initially employed at an illegal internet anabolic steroid business, South Beach Rejuvenation, and sold illegal steroids on behalf of Jeffrey George. Defendant HUTSON also posed as a patient and illegally obtained prescriptions for oxycodone from physicians employed at American, Executive and East Coast Pain clinics. Defendant HUTSON sold the oxycodone pills to third parties. Defendant HUTSON received financing from defendant Christopher George and established an MRI facility which would be referred patients from American and Executive Pain clinics. The MRI facility was in operation for approximately one month and then was terminated. Defendant HUTSON also established and operated an illegal internet anabolic steroid business. Telephone sales consultants hired by HUTSON marketed and sold illegal steroids. Defendant HUTSON employed co-defendant physician Cadet and coconspirator physician Meek to illegally issue prescriptions for steroids without conducting in-person examinations as required by federal law.

Employees of Jeffrey George at South Beach Rejuvenation, including defendant HUTSON, posed as patients at East Coast Pain in order to illegally obtain oxycodone. The cooperating defendant employees will testify that Jeffrey George advised them to go to East Coast so the clinic could generate more money. The physicians at East Coast were informed that these individuals were employed by Jeffrey George and their exams were expedited. The physicians performed cursory

exams and prescribed large quantities of oxycodone. The office manager, Theodore Obermeyer, will testify that he and Jeffrey George monitored the amounts of pills prescribed by the physicians and would repeatedly admonish the physicians to increase the amounts.

Coconspirators will testify that the motive in establishing the pain clinics was to make as much money as possible. They will testify that the coconspirators understood that the more pills that were prescribed by the physicians, the more money they would make. They will testify that the physicians were urged to "keep the patients happy" by prescribing the amount of oxycodone that they requested. Coconspirators will testify that the physicians were informed that if the patients did not receive the quantity of oxycodone they desired, the patients would go to competing clinics. The testimony will establish that there was no legitimate medical necessity in prescribing the quantities of oxycodone and that the pain clinics were in fact, illegal "pill mills."

In sum, the evidence will establish that Defendant HUTSON and other enterprise members were not employed by and/or associated with legitimate medical facilities, but rather a criminal enterprise which had a goal to generate criminal proceeds through the unlawful distribution and dispensing of controlled substances without a legitimate medical purpose.

The defendants also participated in non-medically related criminal conduct. Christopher George financed a fraudulent time-share resale business operated by defendant CHRISTOPHER HUTSON, International Marketing and Finance Group, Inc. The co-conspirators obtained customer lists through corrupt brokers and hired sales people who had previous telemarketing fraud

experience. The telemarketers made false misrepresentations to customers in order to induce the customers to pay a marketing and sales fee. The customers believed that the businesses were advertising and selling their time shares when, in truth and in fact, no such activity occurred.

The above-described activities were committed in the Southern District of Florida and affected interstate commerce through the acquisition of controlled substances from manufacturers located outside of Florida and the solicitation of individuals from other states.

WIFREDO A. FERRER
UNITED STATES ATTORNEY

Date: 10/17/11

PAUL F. SCHWARTZ
ASSISTANT UNITED STATES ATTORNEY

Date: 10/17/11

LAWRENCE D. LaVECCHIO
ASSISTANT UNITED STATES ATTORNEY

Date: 10/17/11

STRIDER DICKSON
ASSISTANT UNITED STATES ATTORNEY

Date: 10-17-11

JOHN F. COTRONE
ATTORNEY FOR DEFENDANT

Date: 10/17/11

CHRISTOPHER HUTSON
DEFENDANT